## Austin Adoption Case.

442

Argued April 26, 1967. Before BELL, C. J., MUS-MANNO, JONES, EAGEN, O'BRIEN and ROBERTS, JJ.

*Richard L. Raymond,* with him *Schroeder, Jenkins & Raymond,* for appellant.

*Basil C. Clare,* for appellees.

OPINION BY MR. JUSTICE MUSMANNO, September 26, 1967:

Debra Lynn Austin, who was born on August 30, 1961, to Barbara Austin and James Carol Austin, lived with her natural parents in Delaware County

from the day of her birth until some time in November, 1963, when James Austin left his wife. In July, 1964, Judge TOAL, with the consent of the child's mother, and Mr. and Mrs. Anthony Mingo, ordered custody of Debra to the Mingos. In December, 1964, Barbara was divorced from her husband and in February, 1966, she married Frank Gee. On September 1, 1966, Mr. and Mrs. Mingo filed a petition for adoption of Debra. A month later Barbara opposed the adoption proceedings through the filing of a petition for writ of habeas corpus to regain custody of Debra. The petitions for adoption and custody were heard at the same time, and on November 15, 1966, the court found that Barbara Austin (now Gee) had abandoned her child, dismissed her petition for custody of Debra and granted adoption to the Mingos. Mrs. Gee appealed to this Court.

Every precept of the law, as well as every instinct and rule of reason, dictate that a child of tender age should not be taken from its mother unless brute circumstances dictate that the child would fare badly with the mother. Nothing less than gross, inexcusable neglect, coupled with evidence of unconcern and irresponsibility toward meeting the duties devolving upon a mother in raising her child can take her offspring away from her. Abandonment can be proof of that type of neglect which will nullify a mother's claim to physical possession of her child.

If a mother renounces ownership over the most treasured possession that can ever come into her days on earth, if she gives up the most precious gem in the diadem of her life for a period of time which establishes conclusively her renouncement of ownership, she cannot complain if that gem appears in the crown of happiness of another person or persons able and ready to assume the responsibilities which the mother has forsworn.

The abandonment, however, must not be the matter of a moment of anguish or distress, or even several repeated moments of distraction; it must continue over a period of six months. The Legislature has said that when a parent allows his or her child to remain away for six months and he or she makes no effort to reclaim it for that half year, this is proof of abandonment. Thus, the only question in this case is whether Mrs. Austin (now Gee) conducted herself for a half year in such a manner as to establish that she had failed in, or had no intention of, performing her parental duties. (Act of April 4, 1925, P. L. 127, §1, 1 P.S. §1).

In *Harvey Adoption Case*, 375 Pa. 1, this Court said: "Abandonment has been defined in the authorities as importing 'any conduct on the part of the parent which evidences a settled purpose to forego all parental duties and relinquishes all parental claim to the child.' . . . For a mother to abandon her child means to give it up absolutely with the intent of never again claiming her right to it. Mere neglect does not necessarily constitute abandonment; ordinarily, to have that effect, it must be coupled with affirmative acts or declarations on her part indicating a positive intention to abandon. Abandonment may therefore be effected, sometimes by a mere formal legal instrument, sometimes by a course of conduct. *It is a matter of intention,* to be ascertained by what the parent says and does, viewed in the light of the particular circumstances of the case: Hazuka's Case, 345 Pa. 432, 435, 29 A. 2d 88, 89. [Emphasis that of the court]. Even where the natural parental right has been nullified by abandonment that right may be retrieved if its reassertion is beneficial to the welfare of the abandoned child: Davies Adoption Case, 353 Pa. 579, 587, 46 A. 2d 252, 256."

The record is not clear as to whether Mrs. Gee flung into the dustbin of time, with an intention never to attempt to recover it, the most valued jewel a woman can wear, the pride of motherhood. It would seem that Barbara was involuntarily thrown into a state of bewilderment when her husband deserted her, leaving her with an empty pantry and purse. To keep a roof over her baby and herself and provide indispensable food, she worked as a waitress, necessitating the employment of a baby sitter, but her income was not adequate to satisfy the baby sitter, the landlord and the milkman. She testified "the constable kept knocking at the door for rent we owed back."

In her distress she turned for counsel to the Child Care Service which recommended that Debra be placed with the mother's paternal grandparents where the infant (then 2½ years old) remained until July 3, 1964, when the Mingos stepped onto the stage of Debra's destiny by offering to care for her. Custody was legally effected through intervention of the Court, after Barbara had spelled out her destitution: "As I am unable to care for my two children at this time, I would like custody of my daughter, Deborah Austin, transferred to Mr. and Mrs. Anthony Mingo. . . I am in agreement with their requests concerning my visiting with the children, and understand that these visits are to take place in their homes one hour each week. . ."

Later Barbara moved to Florida where she married Frank Gee on February 22, 1966. In June of that year she wrote the Child Care Service asking that it inspect her home to determine its suitability for the return of Debra. When the Mingos learned of this development, they understandably counteracted to hold Debra, who was now blooming in their own garden of love and devotion. On September 1, 1966, they filed a petition for adoption of Debra. Barbara fought back with a petition for writ of habeas corpus.

In cases of this kind, someone is bound to suffer a heartache because the attachment of the would-be adopting parents can only be one degree less than the warmth of the natural mother, but as King Solomon had to resort to a drastic procedure to resolve the conflict between two women passionately contesting for the same child, a court must seek out truth and justice through a brow-wrinkling consideration of all the circumstances in the case.

We believe that the court below, without intending this statement as any reflection on the court's diligence, did not obtain adequate evidence upon which to determine whether Mrs. Gee severed the umbilical cord of fidelity to her child.

It was suggested in the proceedings below that Barbara's delay in not remarrying immediately after the desertion of her first husband, and in her not demanding the return of her child immediately after remarrying, indicated abandonment. There is something to be said for this contention but on the other hand it may equally be argued that Mrs. Gee's conduct was consistent with the conclusion that she wished to stabilize her life and have a home worthy of her child before taking definitive legal steps to bring her into it.

The record is simply not adequate upon which to base so drastic a conclusion as to whether Barbara Gee should lose her child for all time or whether Mr. and Mrs. Mingo should be deprived of a child for whom they have cared enough to go to court to obtain permanent adoption of it.

As much as we regret the delay which will be occasioned in the definitive disposition of this litigation, we believe that the court below should hold another hearing for the purpose of obtaining such further evidence as may be necessary in order to arrive at a factual and objective finding as to whether Mrs. Gee did, in the intent of statute, abandon her child.

It may be added that in the event the evidence is equally balanced in appraisement of the issue here presented, the question is to be resolved in behalf of non-abandonment, as the law favors a mother's retention of her child, unless, of course, clear abandonment is established.

Remanded for further hearing in accordance with this opinion.

Mr. Justice COHEN took no part in the consideration or decision of this case.

---

CONCURRING AND DISSENTING OPINION BY MR. JUSTICE ROBERTS:

The evidence before us in this record is very unclear and conflicting. Especially confusing is the testimony of Mrs. Mingo as to whether, when and how often visits by Debra Lynn with her natural mother took place during the period between July 1964 and August 1965.* I suspect a clear description of these facts would be determinative of the issue of abandonment in this case. In addition to the unusual lack of clarity in the testimony, the record contains no indication of whether the court below, in accordance with Supreme Court Rule 46, filed an opinion stating the reasons which led it to conclude that Debra Lynn was abandoned by her natural mother and that adoption by the Mingos would be in the child's best interests.

These considerations, combined with the weight we must give to the findings of fact below, lead me to believe that it would be extremely unwise for this Court to reverse or affirm the decree of the court below. The happiness and well-being of this child surely require us to render our decision in light of as complete a record as possible. I therefore conclude that we must remand the record to the court below in order that we

---

* Compare Record 13a with Record 14a, 29a, 88a, 96a.

may have the benefit of its first hand evaluation and sorting out of the testimony. In this respect I concur with the majority's disposition of the case.

I dissent, however, from that part of the majority's order which requires the court below to hold an additional hearing because I disagree with the majority's conclusion that the record below is necessarily inadequate. In my view, the record below is *possibly* full enough so that, supplemented by the trial court's appraisal of the contexts in which testimony was given, proper findings of fact and conclusions of law could be made. If this possibility is indeed correct, I see no reason for requiring an additional hearing. Indeed considering Mrs. Gee's modest circumstances and residence in Florida, I think it would be unjust to require an additional hearing if unneeded. Of course, if the court below deems an additional hearing necessary or helpful to clarifying any confusing matters in the record, it should hold such a hearing.