602 A.2d 845

**Vaughn S. McMILLEN, Appellant,**

**v.**

**Carolyn F. McMILLEN, now Carolyn F. Shemo, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 26, 1991.

Decided Jan. 28, 1992.

200

Wayne A. Kablack, Simpson & Kablack, Indiana, for appellant.

Francis E. Corbett, Calaiaro & Corbett, Pittsburgh, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

Appellant Vaughn S. McMillen (father) appeals from an order of the Superior Court, 393 Pa.Super. 646, 564 A.2d 1012, vacating the July 22, 1988 child custody order in his favor and reinstating the order of July 31, 1987, which

continued primary custody in appellee Carolyn F. Shemo, formerly Carolyn F. McMillen (mother). We reverse.

The record shows that the parties were married on May 2, 1975 and that their son Emmett was born on September 30, 1977. The parties were subsequently divorced in the state of Wyoming on September 25, 1981. At the time of the divorce, the Wyoming court awarded primary custody of Emmett to the mother, subject only to the reasonable visitation of the father.

In March of 1982, the father instituted an action in the Court of Common Pleas of Indiana County, Pennsylvania, seeking partial custody of Emmett. On April 27, 1982, the court awarded general custody of Emmett to the mother with the right of visitation in the father. The court limited the father's visitation to alternating weekends and holidays, one day every other week and two weeks during the summer.

Over the next six years, the father sought modification of the custody order four times and the mother one time. Each time, the Court of Common Pleas significantly expanded the father's visitation rights. From 1986 on, Emmett repeatedly and steadfastly expressed his preference to live with his father. Finally, on July 22, 1988, the Court of Common Pleas awarded general custody of Emmett to the father. The court opined that:

> ... Emmett's best interests will be served most appropriately by placing him in the custody of his father because of Emmett's desire to live with his father as well as the fact that each home is a suitable environment for Emmett.

(Trial Court Opinion, Earley, P.J., p. 3).

On appeal, the Superior Court vacated the July 22, 1988 custody order and reinstated the previous order of July 31, 1987. In doing so, the Superior Court determined that: 1) the record failed to present any circumstances warranting a change in custody; and 2) the child's best interests would

not be served by changing custody merely because the child wished it.

Our paramount concern in child custody cases is the best interest of the child. *Commonwealth ex rel. Pierce v. Pierce,* 493 Pa. 292, 295, 426 A.2d 555, 557 (1981). A custody order is modifiable without proof of a substantial change in circumstances where such a modification is in the best interests of the child. *See Jaindl v. Myers,* 520 Pa. 147, 553 A.2d 407 (1989) (per curiam); *Martin v. Martin,* 386 Pa.Super. 328, 562 A.2d 1389 (1989). Therefore, contrary to the holding of the Superior Court, the father is not obliged to demonstrate a substantial change in circumstances in order to have the court entertain his motion to modify the existing custody order. To be successful, the father need only show that the modification is in Emmett's best interest.

The father argues that the Superior Court, in determining Emmett's best interests, usurped the function of the trial court by ignoring the trial court's factual findings and also failed to give proper weight to Emmett's steadfast desire to live with his father. The scope of review of an appellate court reviewing a child custody order is of the broadest type; the appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. *Commonwealth ex rel. Robinson v. Robinson,* 505 Pa. 226, 478 A.2d 800 (1984); *Commonwealth ex rel. Spriggs v. Carson,* 470 Pa. 290, 368 A.2d 635 (1977) (plurality). However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. *Lombardo v. Lombardo,* 515 Pa. 139, 146, 527 A.2d 525, 529 (1987). Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion. *Id.*

Having reviewed the previous custody orders in this case, the trial court concluded that both the home of the mother and that of the father were equally acceptable. The trial court, therefore, was forced to look at other factors in making its decision. The only testimony taken at the most recent custody hearing was that of the child, Emmett, who was then almost 11 years old. Emmett testified that he preferred to live with his father.

■ Although the express wishes of a child are not controlling in custody decisions, such wishes do constitute an important factor that must be carefully considered in determining the child's best interest. *Commonwealth ex rel. Pierce v. Pierce*, 493 Pa. 292, 426 A.2d 555 (1981). The child's preference must be based on good reasons, and the child's maturity and intelligence must be considered. *Id.; Commonwealth ex rel. Holschuh v. Holland–Moritz*, 448 Pa. 437, 292 A.2d 380 (1972). The weight to be given a child's testimony as to his preference can best be determined by the judge before whom the child appears. *See Lombardo v. Lombardo*, 515 Pa. 139, 146, 527 A.2d 525, 529 (1987), *citing Commonwealth ex rel. Spriggs v. Carson*, 470 Pa. 290, 368 A.2d 635, 637 (1977).

■ Our review of the record shows that Emmett's preference to live with his father is supported by more than sufficient good reasons. Emmett testified that his stepfather frightens, upsets and threatens him, and his mother does nothing to prevent this mistreatment (H.T., July 22, 1988, pp. 3–4). He testified that he does not get along with either his mother or his stepfather, (H.T. at p. 4) and that he gets along well with his stepmother (H.T. at p. 5). His testimony also revealed that his mother and stepfather leave him alone after school and that, even though his father and stepmother work, he is never left alone when he is at his father's home for the summer (H.T. at p. 11). Emmett also stated that his mother interferes with his sporting and farming activities and refuses even to watch

him play ball (H.T. at pp. 6–7, 12, 15).[1] Thus, we find that Emmett's steadfast wish to live with his father was properly considered, and we find no abuse of discretion in the amount of weight afforded that preference.

Nor do we find an abuse of discretion in the trial court's conclusion that Emmett's best interests would be served more appropriately by placing him in his father's custody. The record supports the trial court's finding that both households were equally suitable. This being so, Emmett's expressed preference to live with his father could not but tip the evidentiary scale in favor of his father. Thus, the trial court's conclusion that it would be in Emmett's best interest to modify the prior custody order by transferring primary custody from the mother to the father is supported by the record, and we find no gross abuse of discretion by the trial court in awarding primary custody to the father.

Accordingly, we reverse the order of the Superior Court and reinstate the order of July 22, 1988.

NIX, C.J., filed a concurring opinion joined by FLAHERTY, J.

ZAPPALA, J., concurred in the result.

NIX, Chief Justice, concurring.

The facts of this case, had we heard them fifteen years ago, would have lent themselves to only one conclusion. In 1967, this Court wrote that "[e]very precept of the law, as well as every instinct and rule of reason, dictate that a child of tender age should not be taken from its mother unless brute circumstances dictate that the child would fare badly with its mother. Nothing less than gross, inexcusable neglect, coupled with evidence of unconcern and irresponsibility toward meeting the duties devolving upon a mother in raising her child can take her offspring away from her." *In re Adoption of Austin,* 426 Pa. 441, 233 A.2d 526 (1967).

---

**1.** The trial court deemed this interference sufficiently detrimental to the child's social growth and development to warrant an explicit directive in the custody order that the mother make Emmett available for these activities whenever she has physical custody of him.

The presumption in favor of mothers when deciding custody cases was a long-standing tradition in this Commonwealth, stemming from the sexist notion that women are uniquely equipped to raise children. It eventually became clear, however, that the bare preference for maternal love did not coincide with the law's overriding concern in child custody cases, the best interests of the child.

In *Commonwealth, ex rel. Spriggs v. Carson*, 470 Pa. 290, 368 A.2d 635 (1977), this Court held that the outmoded "tender years doctrine" was a violation of Equal Protection as it was "offensive to the concept of the equality of the sexes which we have embraced as a constitutional principle within this jurisdiction." 470 Pa. at 298–9, 368 A.2d at 639–640. The constitutional prohibition against sex-based discrimination is by now firmly rooted in the jurisprudential mortar of this Commonwealth. *Hartford Accident and Indemnity Co. v. Insurance Commissioner*, 505 Pa. 571, 482 A.2d 542 (1984). As a result, when reviewing a custody award, an appellate court may not make assumptions about the fitness of those seeking custody based solely on their gender, but may only determine whether the trial court abused its discretion in making its determination.

In this case, the incontrovertible factual findings of the trial court were that while both homes were equally suitable for the child, the child expressed a clear preference to live with the father which was supported by good reasons. It was not a "bare preference," as the Superior Court indicated, but a desire to leave behind certain circumstances of mistreatment which the trial court obviously accepted as true.

The court's factual findings demonstrate that its decision to award custody to the father was not unreasonable and, therefore, does not represent an abuse of discretion. The Superior Court's reversal can only have represented an archaic presumption that a child is best left with its mother.

I therefore agree with the result reached by the majority.

FLAHERTY, J., joins in this concurring opinion.