## Muffley v. Muffley

C.P. of Lehigh County, no. 2008-FC-0713.

*Richard J. Shiroff*, for plaintiff.
*Mark B. Stanziola*, for defendant.

FORD, *J.*, November 5, 2010—This is a custody case about 10-year-old Sarah Ann Muffley. With a significant exception, many good things are happening in Sarah's life. Sadly, through a prolonged course of conscious conduct by Sarah's father, he has attempted and largely achieved minimizing the role of Sarah's mother in her life. To restore mother's necessary place in Sarah's development and for Sarah's overall best interests, an order was filed yesterday,

November 4, 2010, making mother the primary physical custodian of Sarah and granting father meaningful partial physical custody. For the present, the parties will share legal custody. Time will determine if that will work.

A trial was conducted on October 19 and October 20, 2010, on mother's petition for contempt which was filed on May 11, 2010, and on mother's petition for modification filed on September 15, 2010. In yesterday's order, the court granted both petitions. The reasons for the entry of the order are explained in this opinion.

*Findings of Fact*

1. Plaintiff, Dorothy Dieterly (mother), and defendant, Steven Muffley (father), were married on June 20, 1997. Sarah Ann Muffley was born to that marriage on October 22, 2000. The parties separated in October of 2007. They subsequently divorced. In June, 2010, mother married Arthur Dieterly. Father remains unmarried.

2. Mother resides at 1954 Leightsville Road, Hellertown, Northampton County, Pennsylvania 18055. She resides in that home with her husband, Arthur Dieterly, her father, and Sarah when Sarah spends overnights with mother. The home is adequate for Sarah to live there.

3. Father resides at 895-A Oplinger Road, Wescosville, Lehigh County, Pennsylvania 18106. He lives there with his mother, Ruth Ann Muffley (grandmother), and Sarah. Since the birth of Sarah, the parties and Sarah resided in the same household with grandmother. Since separation, Sarah has primarily resided with father. Grandmother continues to live in the same household with

father and Sarah. This home is adequate for Sarah to live there.

4. Mother is employed for 25 hours per week, day shift, as a housekeeper at a hotel.

5. Father is the dairy manager at Weis Market on Emaus Avenue in Allentown. He works day shifts with an early start. The time for the end of the workday varies with a typical end at 3:00 p.m. He works on Saturdays and it is not unusual that he works Sunday hours.

6. Father loves Sarah. In many respects, he has provided appropriate care for her. She has a very good school attendance record. She is doing well in school. She had a reading issue but that has been addressed by father and grandmother. Mother was not consulted by father about this issue. Sarah has many friends. Father provides Sarah with religious education. He has properly attended to Sarah's physical needs. He spends time with her and engages in worthwhile activities. Through father's vigilance and guidance, Sarah is developing in many important ways. Grandmother has assisted father in these positive aspects of the upbringing of Sarah.

7. Since the parties' separation, father has been Sarah's primary physical custodian. With prior orders, the court has granted mother partial physical custody. The parties were also made joint legal custodians by court order.

8. Father has actively excluded mother from meaningful involvement in the raising of Sarah. At times, grandmother has assisted father in doing this. Mother has consistently yearned to be actively involved in Sarah's

life. Father does not discuss Sarah's education, medical care and other legal custody matters with mother. He does not cooperate with her in any respect. Mother longs to be involved in making decisions on these issues. She is capable of jointly deciding these issues. Sarah is suffering emotionally from mother's limited role in her life.

9. On many occasions, mother insisted on father's honoring her custody rights in conversations with father. She regularly inquired of father about Sarah's health, school, and other topics that should be discussed by joint legal custodians. Father gave responses to mother such as: "none of your business." "I'm primary custodian." "I set my own rules." "I don't care about the order." "I'm not going to follow what's in the order."

10. On multiple occasions between April and July, 2010, father has denied or effectively denied mother custody time granted to her under court orders. This included denial of custody time to mother over Easter and on Mother's Day. On some of these days, there was an outright refusal by father to provide Sarah to mother. (One occasion for refusing custody to mother was a bingo party with grandmother.) On the remaining days, father "set up" mother whereby mother declined her own custody time so she would not be placed in a poor light in Sarah's eyes. In these latter instances, father discussed with Sarah invitations that Sarah received for parties and other events to take place in his geographical area during mother's custody time as set by the court. This built Sarah's expectations that she would attend. After these discussions with Sarah, father confronted mother with the events. These were not requests to mother to give

up custody time. Rather, father insisted and mother gave in. Father has not voluntarily given mother any make-up time.

11. Some other reasons for refusal of custody time to mother by father or grandmother (grandmother usually did the custody exchanges for father) when mother arrived to pick up Sarah were no car seat in mother's car, too many people in the car, and mother's husband would be present if Sarah were permitted to go. There were times when mother arrived for pick up but no one appeared.

12. The custody order of January 29, 2009, provides mother the right for regular phone contact with Sarah when Sarah is in father's custody. In large part, mother has not had meaningful communications with Sarah by phone. Father has hurried conversations by statements to Sarah while she was attempting to talk by phone to mother. He has had Sarah call mother after Sarah's usual bedtime and then hurried the conversations along because it was getting late. Father has called mother "idiot," "asshole," and other foul names over the phone while Sarah was listening and also in person in Sarah's presence. Many of mother's calls to Sarah have been unanswered and have not been returned despite the leaving of messages. At times when mother has telephoned father's residence, he or grandmother has hung up the phone on mother.

13. Father insisted that Sarah spend time during Easter 2010 and in the summer with Sarah's paternal aunt in preference to mother's custody time.

14. There were times when Sarah stayed overnight at places other than father's home. He gave no notice or

location information about this to mother even on mother's request.

15. Father is dictatorial, rude, and demeaning to mother.

16. Arthur Dieterly assaulted mother earlier this year before they married. Mother and Mr. Dieterly engaged in counseling to address this incident of violence and issues between the two of them. Mr. Dieterly has two adult children. He has a good relationship with Sarah. There is a great deal of animosity between Mr. Dieterly and father. Both Mr. Dieterly and father are guilty, to varying degrees, of stoking the fires of animosity between them. There have been proceedings before a magistrate district judge on several occasions and police have been called relating to problems between Mr. Dieterly and father.

17. Mother loves Sarah. Mother's inability to be actively involved in the raising of Sarah through father's tactics is emotionally painful for mother.

18. In the limited time which father has permitted mother to have with Sarah, mother has spent her time with Sarah including enjoyable activities with her. She has attempted to be involved in Sarah's school. She has assisted Sarah with her school work. When mother attempted to be involved in a medical appointment at the office of Sarah's allergist on October 11, 2010, father created a scene there. Mother is willing and capable of working with Sarah and continuing the progress that Sarah has made in many aspects of her life.

19. Mother has abided by the court orders. Despite

her frustration with obstacles created by father, she did not employ self-help. She only sought change through the court. Despite her part-time income, she has paid support for Sarah in compliance with amounts ordered in the support case. Mother has attempted to cooperate with father in the upbringing of Sarah. She made a believable commitment to involve father in Sarah's life in the future as required by court order.

20. Father is unapologetic about his treatment of mother and his interference with her attempts to be a good parent. He sees nothing wrong with the way he treats mother and excludes her from Sarah's life. Without this most recent order, father will not meaningfully involve mother in Sarah's life.

### Discussion and Conclusions of Law

As the court and counsel recognize, the paramount consideration in a custody case is the best interests of the child. *McMillen v. McMillen*, 529 Pa. 198, 602 A.2d 845 (1992). In attempt to determine Sarah's best interests, the court considered "all factors which legitimately impact upon the child's physical, intellectual, moral and spiritual well-being." *Zummo v. Zummo*, 394 Pa.Super. 30, 45, 574 A.2d 1130, 1137 (1990).

For months, father has gotten his way, court orders notwithstanding. He has successfully cut off mother from the rich mother-child relationship that could have been and should have been developing for years. This is devastating to mother. More importantly, it is harmful and hurtful to Sarah.

In father's response to and description of some of the incidents that were brought to the attention of the court by mother, he offers excuses and rationalizations. Many of these were not credible. All of them are rejected by the court. Father has defiantly disobeyed and disregarded the court orders. If father remains as the primary custodian, the prospects for Sarah's having even a minimally meaningful relationship with her mother are bleak. Father gave no hint that he will change his ways.

In contrast, mother, who has been harmed by father, has not taken matters into her own hands. She has abided by the court orders. She has patiently waited her turn to have her grievances redressed. She has tried to cooperate with father, but he has rejected all of her attempts. Despite what has been done to her, she offers to cooperate with father in the future. With mother as primary physical custodian, the bond between mother and her child can develop in the way that it was meant to develop based upon what mother and Sarah feel for each other. Because of mother's demonstrated cooperation, father can have an excellent relationship with his daughter if he does what is expected of him.

The court is providing father the opportunity to begin a new phase of cooperation with mother. For the present, the parents are made joint legal custodians. Together, they must decide significant decisions in Sarah's life. However, a word of caution is appropriate here. If father continues to obstruct mother's relationship with Sarah or to demean mother in Sarah's eyes, mother will have to be the sole legal custodian so that decisions can be made, in the proper way, for Sarah's welfare.

It is rare that the court makes a comment about enforcement of a custody order just being entered. This is one of those rare occasions. Father has disregarded orders. He has expressed his contempt for them. If a party violates the November 4 order, the court stands ready to use the considerable array of sanctions available to it to bring that party into compliance.

Sarah's best interests clearly require that mother immediately be made primary physical custodian of Sarah and that father be granted partial custody rights.