J-S31032-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| P.M., II, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| A.T.S., | : | No. 398 EDA 2018 |
| Appellee | : | |
| | : | |
| and K.S. AND P.S., | : | |
| | : | |
| Interested Parties | : | |

Appeal from the Order Entered December 29, 2017
In the Court of Common Pleas of Lehigh County Civil Division at No(s):
No. 2008-FC-0049

BEFORE:  SHOGAN, J., LAZARUS, J., and DUBOW, J.

MEMORANDUM BY DUBOW, J.:                    **FILED OCTOBER 18, 2018**

Appellant P.M., II ("Father") appeals *pro se* from the Order granting A.T.

S. ("Mother") sole legal custody of the parties' minor Child, G.N.S.  The Order

also denied Father's Petition for Modification, and granted Father's Petition for

Contempt.  After careful review of the record, we adopt the well-written,

comprehensive Opinion,[1] authored by the Honorable Michele A. Varricchio of

the Lehigh County Court of Common Pleas, as our own and affirm.

---

[1] Although titled a "Pa.R.A.P. 1925(a) Statement," it is actually an Opinion
filed pursuant to Pa.R.A.P. 1925(a).

Our review of the certified record supports the detailed recitation of the factual and procedural history of this case provided by the trial court and we need not repeat it in detail. **See** Trial Ct. Op., dated 2/26/18, at 1-7. In sum, Child was born in June 2002, six months after Father left Mother to move to Florida in order to escape prosecution for multiple DUIs. Father had sporadic visits with the Child in 2003.

Nearly three years later, when the Child was four years old, Father returned to Pennsylvania to live. Father and the Child gradually became acquainted with the assistance of Maternal Grandfather.[2]

In January 2008, Father filed his first petition seeking shared custody. In December 2008, the court granted Father ten overnight visits each month. The court also ordered that the Maternal Grandparents would have one week of uninterrupted vacation with the Child each summer.

In 2009, when the Child was seven years old, the court modified Father's custody schedule because Father had failed to contact the Child for the first three months of 2009 and saw the Child only three times between April and June 2009. In October 2010, the court entered a Final Custody Order, upon agreement of the parties, providing regular weekly physical custody to Father. The Order provided, *inter alia*, that every other week Father would pick up the Child from the home of the Maternal Grandparents on Sundays and take the

---

[2] Maternal Grandparents, K.S. and P.S., are listed in the caption of this matter as Interested Parties.

Child to school the next day. The Order retained the one-week summer-vacation custody arrangement for the Maternal Grandparents.

In January 2011, the court entered an Order expanding Father's partial custody rights in alternate weeks and during school holidays. The court retained the provision granting Maternal Grandparents' one-week summer vacation period.

In October 2011, when the Child was nine years old, Father relocated to Florida. The parties agreed on a partial custody schedule so Father could spend time with the Child during alternating holidays and school breaks. However, during the December 2011 holiday break, Father got drunk in front of the Child and became involved in a fight where Father's throat was cut. Mother filed a Petition to Modify and on August 29, 2012, the court entered a Custody Order restricting Father's time with Child to supervised visits until Father completed a drug and alcohol evaluation and filed a Petition for Modification.

Father filed a Petition to Modify Custody in January 2013, and the parties agreed to a partial physical custody schedule for the Child to visit Father in Florida and in Lehigh Valley over Christmas vacation. On February 27, 2014, the Court entered another agreed-upon Final Custody Order granting Father partial physical custody for one month in the summer and a portion of Christmas and Spring breaks. The court removed the requirement that Father have supervision during his custody periods.

On November 12, 2015, Father filed a Petition for Modification seeking primary custody of the Child, who was then 13 years old, due to Child's slipping grades, inappropriate pictures and video games, and the Child's alleged drug and alcohol use. The court held a custody trial on May 6, 2016, after which it denied Father's Petition to Modify, but again granted Father one month in the summer and portions of school breaks.

On July 3, 2017, when the Child was fifteen years old, Father filed the instant Petition for Modification, again seeking primary custody, and a Petition for Contempt. The court held a hearing on December 21, 2017, at which Father represented himself.

At the beginning of the hearing, the presiding judge noted that she had interviewed the Child *in camera*, and he had clearly stated that he did not want to move to Florida. *See* N.T., 12/21/17, at 3. The court heard testimony from Mother, Father, Maternal Grandparents, Paternal Step-Grandmother, Paternal Great Aunt, Father's wife, and Mother's paramour. Following the hearing, the court orally delivered its analysis of the sixteen custody factors set forth in 23 Pa.C.S. § 5328(a). *See* N.T. - Analysis of Factors, 12/21/17.

On December 29, 2017, the Court entered a Final Order granting Father's Petition for Contempt and denying Father's Petition for Modification. The court annexed a copy of the transcript from the hearing providing its analysis of the sixteen custody factors. *See* Final Order, dated 12/29/17. In its Order, the court (1) ordered Mother to pay $300.00 to Father as a contempt sanction; (2) granted Mother sole legal custody and primary physical custody;

(3) granted Father periods of partial physical custody as the parents may agree, and delineated school break visits in the event the parties cannot agree. *Id*.

Father filed a *pro se* Notice of Appeal on January 23, 2018. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Father raises the following issues for our review in his *pro se* Brief:

1. Whether the trial court erred or abused its discretion when it overruled Father's objection averring that Maternal Grandparents lack standing for any form of custody and its conclusion that Maternal Grandparents stand "in *loco parentis*" to Child despite lacking consent of Father.

2. Whether the trial court erred or abused its discretion failing to consider all the custody factors set forth in 23 Pa.C.S [] § 5328(a), and by failing to account for the required factors in reaching its decision[.]

3. Whether the trial court erred or abused its discretion by denying Father's petition to modify, after Mother and Maternal Grandparents testified that Mother has in fact relinquished her parental duties of Child to Maternal Grandparents and that Mother no longer has primary physical custody of Child.

4. Whether the trial court erred or abused its discretion by merely ordering a special provision of custody to continue to allow Child to reside with Maternal Grandparents whom live in another school district, and thus giving Maternal Grandparents primary physical custody, over Father's right of custody, ultimately violating Father's right to due process. "The right to parent is a fundamental right that deserves the most protection afforded to individuals." *Id*., at 65, 120 S.Ct. 2054.

5. Whether the trial court erred or abused its discretion by concluding Father's reward for legal fees and transportation costs amounted to $300.00.

6. Whether trial court erred or abused its discretion in suppressing testimony of Father's witnesses, Father avers the testimony suppressed would have provided proof of the contentious behavior of the Maternal Grandfather and his attempts to alienate Child from Father as outlined in Father's pretrial statement.

7. Whether the trial court erred or abused its discretion by failing to include evidence that was included in Father's exhibits.

Appellant's Brief at 11-13 (Answers omitted).

**Standards of Review**

When reviewing child custody matters, our standard of review is well settled:

> Our paramount concern and the polestar of our analysis in this case, and a legion of prior custody cases is the best interests of the child. The best interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being. On appeal, our scope of review is broad in that we are not bound by deductions and inferences drawn by the trial court from the facts found, nor are we required to accept findings which are wholly without support in the record. On the other hand, our broad scope of review does not authorize us to nullify the fact-finding function of the trial court in order to substitute our judgment for that of the trial court. Rather, we are bound by findings supported in the record, and may reject conclusions drawn by the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court. Further, on the issues of credibility and weight of the evidence, we defer to the findings [of] the trial judge. Additionally, appellate interference is allowed only where it is found that the custody order is manifestly unreasonable as shown by the evidence of record.

*Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006) (citation omitted).

This Court may not interfere with a trial court's conclusions unless they

"represent a gross abuse of discretion." ***Luminella v. Marcocci***, 814 A.2d 711, 716 (Pa. Super. 2002).

The Child Custody Act, 23 Pa.C.S. §§ 5321-5340, governs all custody proceedings commenced after January 24, 2011. ***E.D. v. M.P.,*** 33 A.3d 73, 77 (Pa. Super. 2011). A trial court must consider sixteen custody factors when deciding a Petition for Custody. ***See*** 23 Pa.C.S. § 5328(a).

Our Supreme Court has explained, "[a]lthough the express wishes of a child are not controlling in custody decisions, such wishes do constitute an important factor that must be carefully considered in determining the child's best interest." ***McMillen v. McMillen***, 602 A.2d 845, 847 (Pa. 1992) (citation omitted). Further, "[t]he child's preference must be based on good reasons, and the child's maturity and intelligence must be considered." ***Id.*** Finally, "[t]he weight to be given a child's testimony as to his preference can best be determined by the judge before whom the child appears." ***Id.***

With respect to Appellant's last two issues raising evidentiary challenges, we note the following standard of review:

> The admission or exclusion of evidence is within the sound discretion of the trial court, and in reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law. A trial court has wide discretion in ruling on the relevancy of evidence and its rulings will not be reversed absent an abuse of discretion.

***B.K. v. J.K.***, 823 A.2d 987, 991–92 (Pa. Super. 2003) (internal citations omitted).

**Adoption of Pa.R.A.P. 1925(a) Opinion**

As noted above, Judge Varricchio carefully and thoroughly reviewed and thoughtfully analyzed each issue raised by Appellant, with accurate reference to the record, citation to governing statutory law, and discussion of dispositive case law. Our careful review of the record supports the trial court's disposition and we discern no abuse of discretion. Accordingly, we adopt the court's Rule 1925(a) Opinion as our own and affirm the December 29, 2017 Custody Order. ***See*** Tr. Ct. Op., filed 2/26/18 (concluding: **(1)** contrary to Appellant's contention, the court analyzed the sixteen custody factors on the record and annexed the transcript of that hearing to the Order, ***id***. at 2-3; **(2)** recognizing the strong psychological bond between the Child and Maternal Grandparents, but noting that Maternal Grandparents did not seek and were not awarded any amount of custodial time in the court's December 27, 2017 Order, ***id***. at 7-9; **(3)** noting Mother and Maternal Grandparents have for years shared parenting responsibilities of Child without objection from Father; Mother has not abandoned Child while he lives at Maternal Grandparents' home which is one mile from Mother's home: Mother sees Child daily, Child spends the weekends at Mother's home, Maternal Grandfather, a lifelong educator, provides educational and emotional support to Child while Child attends school in Salisbury School District; ***id***. at 9-13; **(4)** referencing its analysis of the sixteen custody factors, and recognizing Father's "great strides in his life" and his relationship with Child, but concluding that uprooting Child "from his

community, immediate and extended family, and boy scout troop where he is working on becoming an eagle scout, to move him to Florida for his final 2 and ½ years of high school" would not be in the Child's best interests, *id*. at 9-10; **(5)** concluding that the $300 contempt sanction imposed on Mother was proper because Father did not present proof of his legal fees or travel expenses timely and the sanction was appropriate pursuant to 23 Pa.C.S. § 5323(g)(1)(ii) for Mother's willful failure to comply with the prior court order, *id*. at 15-16; **(6)** concluding that the court (a) did not err in precluding the child's great-aunt from providing what would have been expert testimony, and (b) did not restrict Father from asking questions about Maternal Grandfather of any witness or from presenting his own testimony about his relationship with Maternal Grandfather, *id*. at 16-19; **(7)** observing that Father had annexed many exhibits, including email exchanges and letters, to his Petition to Modify and Petition for Contempt that were considered by the court as part of the judicial record but which Father failed to move into evidence at trial; detailing Father's nine exhibits that were marked at trial, noting six exhibits were excluded on hearsay grounds or for other technical reasons, *id*. at 20-25).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/18/18