J-A30043-18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| D.C.P. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| v. | : | |
| | : | |
| A.A.P. | : | |
| | : | |
| Appellee | : | No. 1110 WDA 2018 |

Appeal from the Order Dated July 5, 2018
in the Court of Common Pleas of Westmoreland County
Civil Division at No(s): 1956 of 2016-D

BEFORE:  SHOGAN, J., KUNSELMAN, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:        **FILED FEBRUARY 20, 2019**

D.C.P. (Mother) appeals from the order dated July 5, 2018, which maintained a prior order granting shared legal and physical custody of A.A.P., born March 2006, and E.A.P., born December 2010, (collectively, Children) to Mother and Children's biological father, A.A.P. (Father).  After review, we affirm.

We provide the following background.  On October 31, 2016, Mother filed a complaint in divorce against Father, and on August 24, 2017, Mother filed a complaint seeking shared custody of Children.  Following a custody conciliation conference, the trial court issued a temporary order on November 6, 2017, which provided, in relevant part, shared legal and physical custody to Mother and Father, with a 50/50 physical custody arrangement.

_____

* Retired Senior Judge assigned to the Superior Court.

Thereafter, Mother filed a request for pretrial conference, seeking to modify the November 6, 2017 order. Specifically, Mother sought to change the physical custody arrangement so that she would have primary physical custody of Children, with Father having partial physical custody on the majority of weekends and for extended periods during the summer. Further, citing Children's special educational and developmental needs, Mother sought to change Children's school from a private school, St. Sebastian School, to a public school, Bethlehem-Center School District, believing their needs could be better addressed there.

On June 26, 2018, Mother and Father appeared with their respective counsel for a custody trial. The trial court heard testimony from three witnesses: Mother, Father, and Mother's boyfriend, David Gilpin. In addition, the court conducted an *in camera* examination of Children.

Mother is and always has been a stay-at-home parent to Children. Father has a bachelor's degree in accounting and has been steadily employed as a revenue agent with the state Department of Revenue. His daily schedule is from 8:00 a.m. to 4:00 or 4:30 p.m. and his employment does not require travel. When money was tight during the marriage, Father also worked on weekends at a local restaurant for about 1½ years to provide additional income for the family. At the time of trial, Mother was living with Gilpin, a school teacher, and they had no plans to marry. Since Mother and Father's separation in October 2016, Children have resided with Mother and Father in

a 50/50 physical custody arrangement. Both Mother and Father are actively involved in Children's lives and supported by extended family and Gilpin.

When A.A.P. was two years old, he was diagnosed with autism. Due to her stay-at-home status, Mother was the primary parent to attend in-home and outpatient therapy sessions while Father was at work. Father attended all doctors' appointments, including taking time off from work to do so. Outside of working hours, Mother and Father shared equally these therapy and medical responsibilities. A.A.P. attended St. Sebastian School and had an individualized educational plan (IEP) there. Prior to trial, Father agreed to Mother's request to change A.A.P. to Bethlehem-Center School District, anticipating he would start there that fall.

Because E.A.P. was born prematurely, he received various therapies until age three. Again, because Mother was not working outside of the home, she attended most of the therapy sessions, while Father attended some. Since preschool, E.A.P. has attended St. Sebastian School. While E.A.P. was diagnosed with oppositional defiant disorder relating to his behavior at home, he has not had behavior issues at school. He does not have an IEP at school or otherwise receive special educational services. He performs well at school and has friends there.

Following the custody trial, the trial court issued an order on July 5, 2018, which provided that the court's prior order dated November 6, 2017 shall remain in effect; ordered A.A.P. to attend Bethlehem-Center School

- 3 -

District, E.A.P to continue attending St. Sebastian School, and Mother and Father to enroll in co-parenting classes; and set forth a holiday and vacation schedule. On August 3, 2018, Mother filed a notice of appeal, as well as a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On August 6, 2018, the court filed an order pursuant to Pa.R.A.P. 1925(a), which directed us to its July 5, 2018 opinion.

Mother raises the following issues for our review.

1. Did the [trial] court err in correctly [*sic*] considering all factors when deciding which parent provided total and continued care to [Children] to aid in their nurturing and emotional development?

2. Did the trial court err in correctly [*sic*] considering [Mother] was not historically and continually the primary caregiver but equal in accordance with custody factors?

3. Did the [trial] court err by finding [Children] did not wish to live with [Mother] or did not know where they wanted to live?

Mother's Brief at 5 (reordered for ease of disposition). We address Mother's claims mindful of our well-settled standard of review.

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. This Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. We defer to the credibility determinations of the presiding trial judge, who viewed and assessed the witnesses first-hand. We, however are not bound by the trial court's deductions or inferences from its factual findings, and ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the trial court's conclusions only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

- 4 -

***P.J.P. v. M.M.***, 185 A.3d 413, 417 (Pa. Super. 2018) (citations and internal quotation marks omitted).

"When a trial court orders a form of custody, the best interest of the child is paramount." ***Id.***, *quoting* ***S.W.D. v. S.A.R.***, 96 A.3d 396, 400 (Pa. Super. 2014). Our Supreme Court has explained, "[a]lthough the express wishes of a child are not controlling in custody decisions, such wishes do constitute an important factor that must be carefully considered in determining the child's best interest." ***McMillen v. McMillen***, 602 A.2d 845, 847 (Pa. 1992) (citation omitted). Further, "[t]he child's preference must be based on good reasons, and the child's maturity and intelligence must be considered." ***Id.*** Finally, "[t]he weight to be given a child's testimony as to his preference can best be determined by the judge before whom the child appears." ***Id.***

The factors to be considered by a court when awarding custody are set forth at 23 Pa.C.S. § 5328(a).

> **(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> > (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
> >
> > (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

After considering the custody factors, the trial court determined it was in Children's best interests to maintain its prior order, which, *inter alia*, granted shared legal and physical custody to Mother and Father, with a 50/50 physical custody arrangement on an alternating weekly basis with exchanges taking place on Sundays at 5:00 p.m.

On appeal, Mother argues that the trial court's grant of shared physical custody on a 50/50 basis did not give due weight to Mother's past and present role as primary caregiver and disregarded Children's testimony as to their preferences. Mother's Brief at 8-17. Specifically, Mother argues that Children prefer to live with her, and as a stay-at-home parent, she spends more time with Children compared to Father, who works full-time, and thus, she is entitled to primary custody. *Id.*

We address Mother's claims together as they all relate to her contention that she should be granted primary custody of Children. With respect to her claim that she was and is the primary caregiver, the trial court found the following.

> For the most part, Mother has been a "stay-at-home [parent]." Father has been steadily employed full-time with the Pennsylvania Department of Revenue, and for approximately [one and one-half] years, he also worked part-time on weekends at Pizza Hut in order to earn extra money to help make ends meet.
>
> When [A.A.P.] was born, Mother and Father each took turns feeding him during the night. Both parents cared for him, bathing

him and changing his diapers. When [A.A.P.] was [two] years old, he was diagnosed with autism, and began to receive daily in-home therapeutic services.

Because [E.A.P.] was born prematurely, he required therapeutic services for a variety of issues as well. Mother conscientiously engaged in both of [Children's] therapy sessions. Because Father's participation was limited by his work obligations, Mother was the parent who primarily participated in these therapy sessions.

Despite his job demands, Father is involved in many of [Children's] activities, attending soccer practices and games, basketball, Boy Scouts, and doctors' appointments. He reads to them, takes them to the park, and takes them to McDonald's every Saturday morning for breakfast. Recently, Father and [A.A.P.] spent a week at Boy Scout [c]amp together.

Frequently, [Children's] paternal grandmother has lent a hand in relieving Mother and Father of some of their parental duties. She has been a constant, loving and reliable presence in [Children's] lives.

Because Mother was not employed outside the home, she cared for [Children] and tended to their daily needs while Father was employed and taking care of the financial needs of raising a family. In summation, although Father's ability to attend to parenting duties was limited somewhat by his responsibilities as the household's sole income earner, both parents contributed equally, according to their respective availability, to the parenting duties on behalf of Children.

***

It is well settled that the fact that a party must work for a living is not sufficient justification for denial of custody. ***Witmayer v. Witmayer***, 467 A.2d 371 (Pa. Super. 1983). The employed party must, however, demonstrate that the children will be adequately cared for during work hours and that his environment will be characterized by stability and genuine concern for the [children's] well-being. …Father's mother and aunt have contributed to [Children's] stable family environment from the beginning. Because he lives with his mother, Father's work schedule does not leave [Children] unsupervised or interfere

with his ability to raise [Children]. While Mother is fortunate that she continues to be able to remain unemployed and available at all times, Father's employment cannot and will not be a factor weighed against him by [the trial court].

Trial Court Opinion, 7/5/2018, at 4-5, 9.

With respect to Mother's claim relating to Children's preferences, Children were interviewed individually *in camera* in the presence of Mother's and Father's attorneys. At the time, A.A.P. and E.A.P. were 12 and 7½ years old, respectively. The trial court determined the following.

> While [A.A.P.] did not express a specific preference to spend the majority of time with one parent or the other, he revealed the following. He gets along well with Mother and [Gilpin]. As a result of Father working a lot, Father does not spend as much time with [Children] as Mother and [Gilpin] do. When asked, [A.A.P.] said that he has a lot of conversations with Mother and [Gilpin] about Father not paying attention to him, but that he does not talk to [] Father about such things.
>
> [A.A.P.] became animated and was more relaxed when talking about the time he had with [] Father at Boy Scout [c]amp, and was proud of the five merit badges he earned. He also talked fondly of his paternal grandmother, how he likes to listen to music with her, how she does things with him, [] pays attention to him, and how he generally likes spending time with her.
>
> When asked about the amount of time that he would want to spend with each of his parents, [E.A.P.] candidly said: "I don't know which one to pick. I want to live with both of them." He talked about engaging in more activities with Mother and [Gilpin] than he does with Father. However, he loves Father, Father treats them well, and he likes going to McDonald's with Father on weekends. He also said he likes going to school at [his current, private school].

*Id.* at 7-8. Further, the court found that "[a]t times during the interviews in chambers with [Children, their] responses to questioning suggested that they

- 9 -

may have discussed some of the current issues with Mother and [Gilpin]." *Id.* at 8; *see* N.T., 6/26/2018, at 9-10, 24-25 (*in camera* examination). The court also determined that "Mother continues to demonstrate a considerable amount of hostility and resentment toward Father." Trial Court Opinion, 7/5/2018, at 9.

Considering our standard of review and the great deference it affords to the trial court, we find no error in the court's conclusions. Our review of the record reveals the court adequately considered the statutory factors, and set forth its reasoning, supported by the record, for granting shared legal and physical custody.

Specifically, the court, presiding over the trial and reviewing all the testimony and evidence, found Children's best interests are served by sustained weekly contact with each of their loving parents. The court determined that both parents are equally capable of handling parental duties and maintaining a relationship with Children to support their emotional needs. It found both parents are nurturing, offer stability and continuity, are engaged in many activities with Children, and are supported by beneficial relationships with extended family and Gilpin.

In addition, though A.A.P. did say he wanted to live with Mother, he did not give a specific reason as to why. N.T., 6/26/2018, at 6 (*in camera* examination). As for E.A.P., his responses show he was hesitant to decide between his parents, changing his answers throughout his testimony by

alternating between wanting to live with Mother and saying that he didn't know "which one to pick." *Id.* at 25. The trial court acknowledged that Children spend more time with Mother due to her stay-at-home status, but also recognized that Children enjoy spending time with Father. A.A.P. told the trial judge about his recent trip with Father; the two of them had just spent an entire week together at an overnight scout camp, and A.A.P. said he had a good time with Father. *Id.* at 7-9. E.A.P. told the trial judge that he loves Father, Father is good to him, he misses Father at times, he likes going to McDonald's with Father every Saturday and to Kennywood amusement park every year, and Father sometimes plays baseball with him in the evenings and weekends. *Id.* at 19, 23-24.

Even if the trial court misstated that A.A.P. did not have a preference, and even though E.A.P. changed his mind, their preferences are but *one* factor, as a child's wishes are not controlling in custody decisions. *McMillen*, 602 A.2d at 847 (Pa. 1992); *see also McCourt v. Meyers*, 407 A.2d 875, 880 (Pa. Super. 1979) (observing the "well-recognized tendency among children … to change their minds and desires from time to time"). The trial judge was in the best position to determine the weight to give Children's testimony as to their preferences. *See McMillen*, *supra.* It is clear that the trial court, in making its determination, took into consideration Mother's and Gilpin's influence on Children in their responses. Less clear is whether Children were able to express their true feelings to the court. The trial court's

determination that Mother and Gilpin appeared to have exerted their influence over Children's responses was based on the trial court's first-hand observations, which we will not set aside. Even though A.A.P. did say that he had talked to Father about his "not paying attention," and the trial court stated otherwise, A.A.P.'s statement is undermined by the trial court's finding of influence.

Thus, it was within the trial court's discretion to determine that it is in Children's best interests to spend equal amounts of time with each parent. Recognizing how difficult these custodial decisions are for courts when dealing with two loving and caring parents, we conclude that the trial court did not abuse its discretion when it analyzed the factors set forth at 23 Pa.C.S. § 5328(a) to grant the parties shared legal and physical custody of Children to serve Children's best interests. Because we find no abuse of discretion and conclude that none of Mother's claims entitles her to relief, we affirm the order of the trial court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/20/2019