J-S44035-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| ALEXANDER GARCIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ASHLEY GARCIA | : | |
| | : | |
| | : | No. 1266 MDA 2022 |
| APPEAL OF: JOANN KWIATKOWSKI | : | |

Appeal from the Order Entered August 24, 2022
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
12733 of 2021

| JOANN KWIATKOWSKI | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ASHLEY GARCIA AND LOUIS | : | No. 1287 MDA 2022 |
| SANCHEZ | : | |

Appeal from the Order Entered August 24, 2022
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
9859 of 2021

BEFORE:  PANELLA, P.J., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:          **FILED:  FEBRUARY 1, 2023**

In this custody matter, Joann Kwiatowski (Maternal Grandmother) is the

mother of Ashley Garcia (Mother) and maternal grandmother of Mother's three

children:  E.G. (born 2007) and A.G. (born 2010), who both have the same

_____

[*] Retired Senior Judge assigned to the Superior Court.

father; and G.S. (born 2015). Both Maternal Grandmother and Mother sought custody of all three children, but the Court of Common Pleas of Luzerne County (trial court) ordered that (1) they share physical custody of E.G. and A.G., and (2) Mother have primary physical custody of G.S. with Maternal Grandmother having partial visitation. Maternal Grandmother now appeals and contends that the trial court erred in failing to award her primary custody of all three children. After review, we affirm.

**I.**

The trial court summarized the relevant factual and procedural history of this matter.

> By way of background, Mother and Alexander Garcia were married in 2006. In 2009, the couple began residing with Maternal Grandmother. Mother, Alexander, and their two minor children, E.G. and A.G., resided with Maternal Grandmother until around 2012, when Maternal Grandmother conveyed her interest in the home to Mother and Alexander Garcia, and moved to Florida to pursue an employment opportunity. Maternal Grandmother then returned to Pennsylvania in 2014, and began residing again with Mother, Alexander Garcia, E.G. and A.G. Shortly after, Mother and Alexander Garcia separated, and Garcia left the residence. Mother, E.G. and A.G. continued to reside with Maternal Grandmother until early 2015, when Maternal Grandmother moved to her own residence in Avoca, PA. In 2015, Mother had a third child, G.S., with Louis Sanchez[]. Louis Sanchez was arrested when G.S. was approximately six (6) months' old, and was incarcerated. At that time, Mother and the children again were residing with Maternal Grandmother, and subsequently Mother and the children moved out and obtained an apartment in Plains, PA. Shortly thereafter, in spring of 2017, Mother was arrested for attempting to deliver a controlled substance to Father at Graterford correctional institution. At the time of the incident, she had all three young children physically with her. Mother was arrested during the incident, and Maternal Grandmother traveled to retrieve the children. Maternal

Grandmother and Mother then resumed an unofficial custody arrangement with the minor children.

In spring of 2018, Mother was arrested again for selling a controlled substance to an undercover law enforcement officer. At that time, Maternal Grandmother assumed physical custody of all three minor children. Mother was incarcerated from April of 2018 until September of 2018. Shortly thereafter, in October of 2018, Mother was sentenced to one (1) to three (3) years' incarceration, followed by a lengthy period of special probation. Mother was paroled in June of 2019 to Maternal Grandmother's residence, where she resided until a family dispute in August of 2021 that led to Mother's eviction from Maternal Grandmother's residence in September of 2021. At the time she vacated the residence, Mother took minor child G.S. with her, and E.G. and A.G. remained at Maternal Grandmother's residence.

Several days after Mother left Maternal Grandmother's residence with G.S., Maternal Grandmother filed an Emergency Petition for Special Relief alleging that Mother was "transferred to a new halfway house or incarceration" and seeking ex parte relief of a return of G.S. to Maternal Grandmother's residence, which was granted. Mother responded by filing her own Petition for Special Relief seeking immediate return of G.S. Following a hearing, the order granting Maternal Grandmother sole physical and sole legal custody of G.S. was vacated, and G. S. was returned to Mother. E. G. and A. G. remained with Maternal Grandmother pursuant to the governing Lackawanna County Order at that time.

Following the Special Relief hearing, the Court issued an interim custody schedule regarding A.G., E.G., and G.S. The November 24th, 2021 Interim Order provided that Mother had physical custody of A.G. and E.G. on alternating weekends, and Maternal Grandmother had physical custody of G.S. on the opposite weekends, for the purpose of ensuring that all three children could spend each weekend together. The Lackawanna County case was ultimately transferred to Luzeme County by Order dated December 3rd, 2021. On March 3rd, 2022, Mother filed a Petition for Modification, seeking primary physical custody of A.G. and E.G., as she already had primary physical custody of G.S. Maternal Grandmother also filed a Petition, seeking primary

physical custody of G.S.[1]   A two[-]day trial was held on both Mother and Maternal Grandmother's respective Petitions on August 8th, 2022 and August 15th, 2022.  [The trial court] issued its Order[s] on August 24th, 2022.

Trial Court Opinion (TCO), 9/22/22, at 3-5 (footnote omitted).

In the case involving E.G. and A.G. (1266 MDA 2022), the trial court ordered that Mother, Alexander Garcia (Father) and Maternal Grandmother share legal custody over the two children, with Mother and Maternal Grandmother sharing physical custody on a week-to-week basis.  As for the case involving G.S. (1287 MDA 2022), the trial court awarded Mother sole custody, with Maternal Grandmother having custody of G.S. on alternating weekends.[2]   After entry of the custody orders, Maternal Grandmother filed timely notices of appeal and contemporaneous Pa.R.A.P. 1925(b) statements. A few weeks later, on September 19, 2022, the trial court later issued its factual findings and assessment of the Section 5328(a) factors.[3]   This Court *sua sponte* consolidated these appeals.

---

[1] While Maternal Grandmother was not *in loco parentis* of G.S., she had standing to file her petition under 23 Pa.C.S. § 5324(3)(iii).

[2] Louis Sanchez, father of G.S, did not participate in the proceedings.

[3] The trial court issued its assessment of the factors within the allowable time. **See** 23 Pa.C.S.A. § 5323(d) (a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order); **C.B. v. J.B.**, 65 A.3d 946, 955 (Pa. Super. 2013) ("[S]ection 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal."

**II.**

On appeal, Maternal Grandmother presents three issues for our review:

I. Whether the trial court committed an abuse of discretion and whether said decision was against the weight of the evidence by failing to determine that it was in the best interest and welfare of the minor children to award [Maternal Grandmother] primary physical custody after applying the statutory factors set forth in 23 Pa.C.S. § 5328(a)?

II. Whether the trial court committed an abuse of discretion in failing to properly apply the separation of siblings doctrine and award [Maternal Grandmother] primary physical custody of all the minor children?

III. Whether the trial court committed an abuse of discretion in failing to put additional weight to the preference of the minor children based upon the age, intelligence and maturity of the children and award [Maternal Grandmother] primary physical custody in accordance with the minor children's preference?

Maternal Grandmother's Brief at 15 (complete capitalization omitted; roman numerals added).

We first review our standard of review for custody matters:

This Court reviews a custody determination for an abuse of discretion. We will not find an abuse of discretion "merely because a reviewing court would have reached a different conclusion." Rather, "[a]ppellate courts will find a trial court abuses its discretion if, in reaching a conclusion, it overrides or misapplies the law, or the record shows that the trial court's judgment was either manifestly unreasonable or the product of partiality, prejudice, bias or ill will."

Further, when this Court reviews a trial court's "best interests" analysis in custody matters, our scope of review is broad, but we are "bound by findings supported in the record, and may reject conclusions drawn by the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court." Importantly, "[o]n issues of credibility and weight of the evidence, we defer to the findings of the trial judge who has

- 5 -

had the opportunity to observe the proceedings and demeanor of the witnesses." We can only interfere where the "custody order is manifestly unreasonable as shown by the evidence of record."

*R.L. v. M.A.*, 209 A.3d 391, 395 (Pa. Super. 2019) (citations omitted).

This Court has stated:

It is not this Court's function to determine whether the trial court reached the "right" decision; rather, we must consider whether, "based on the evidence presented, given due deference to the trial court's weight and credibility determinations," the trial court erred or abused its discretion in awarding custody to the prevailing party.

*King v. King*, 889 A.2d 630, 632 (Pa. Super. 2005) (citation omitted).

The Custody Act requires that a trial court consider all the Section 5328(a) factors when reviewing a custody petition. *See* 23 Pa.C.S. § 5328(a).

A trial court must "delineate the reasons for its decision when making an award of custody either on the record or in a written opinion." 23 Pa.C.S. § 5323(a)[,] (d). However, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations."

"The paramount concern in child custody cases is the best interests of the child." "The best-interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being."

*R.L.*, 209 A.3d at 395 (some citations omitted).

Section 5328(a) states:

**(a) *Factors.*—**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a)(1)-(16).

We further note the following authority governing a custody matter between a parent and third party. Section 5327 provides: "In any action regarding the custody of the child between a parent of the child and a nonparent, there shall be a presumption that custody shall be awarded to the parent. The presumption in favor of the parent may be rebutted by clear and convincing evidence." 23 Pa.C.S. § 5327(b). This Court has explained:

> The parent has a *prima facie* right to custody, "which will be forfeited only if convincing reasons appear that the child's best interest will be served by an award to the third party." ... The presumption in favor of the parent may be rebutted by clear and convincing evidence." 23 Pa.C.S. § 5327(b). This Court has defined clear and convincing evidence "as presenting evidence that is so clear, direct, weighty, and convincing so as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue."
>
> Accordingly, "even before the proceedings start, the evidentiary scale is tipped, and tipped hard, to the biological parents' side." When making a decision to award primary physical custody to a nonparent, the trial court must "hear all evidence relevant to the child's best interest, and then, decide whether the evidence on

behalf of the third party is weighty enough to bring the scale up to even, and down on the third party's side."

These principles do not preclude an award of custody to the nonparent but simply instruct the trial court that the nonparent bears the burden of production and the burden of persuasion and that the nonparent's burden is heavy. It is well settled, "[w]hile this Commonwealth places great importance on biological ties, it does not do so to the extent that the biological parent's right to custody will trump the best interests of the child. In all custody matters, our primary concern is, and must continue to be, the well-being of the most fragile human participant — that of the minor child." "Once it is established that someone who is not the biological parent is in *loco parentis*, that person does not need to establish that the biological parent is unfit, but instead must establish by clear and convincing evidence that it is in the best interests of the children to maintain that relationship or be with that person."

***R.L.***, 209 A.3d at 396 (emphasis & some citations omitted).

## III.

Maternal Grandmother's first issue consists of a factor-by-factor critique of the trial court's assessment of the custody factors under Section 5328(a). In this discussion, she alleges that the trial court abused its discretion in its assessment of nine custody factors, namely, factors (a)(2), (3), (4), (8), (9), (10), (12) and (13).[4] As alleged in her issue above and as reflected in her discussion of each factor, she alleges that the trial court abused its discretion for not weighing these factors in her favor. In effect, Maternal Grandmother

---

[4] Maternal Grandmother also discusses the trial court's assessment of factors (a)(1) and (5) but makes no allegation that the trial court's assessment of those factors was not supported by record evidence.

is asking us to reject the trial court's findings and credibility determinations in favor of the factual findings and credibility determinations that she proposes.

Here, the trial court stated it found all custody factors were relevant concerning all children except for factor (a)(7) concerning G.S., since he was too young to express a well-reasoned preference.[5] The trial court then found that eight factors were fulfilled by both Mother and Maternal Grandmother: (a)(1), (3), (5), (9), (10), (11), (12) and (15). The trial court went on to discuss the remaining factors and explain its findings as they pertained to the best interests of the children at this juncture, particularly in light of the progress that Mother has made since her incarceration and the presumption that custody be awarded to the parent.

We find Maternal Grandmother's first issue warrants no relief. Rather that the claim that the trial court committed a legal error or made findings without record evidence, Maternal Grandmother's issue asks this Court to re-weigh the evidence in her favor. This we cannot do  As we have explained:

> [O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.
>
> The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

---

[5] *See* Order, 9/19/22, at 6, RR. 55a.

The test is whether the evidence of record supports the trial court's conclusions.

***A.V. v. S.T.***, 87 A.3d 818, 820 (Pa. Super. 2014) (citations omitted).

After review, we find that the trial court's findings concerning the bests interests of the children are supported by the evidence and its conclusions from the evidence are reasonable. While the trial court did not discuss every element, the trial court considered each custody factor and sought to render a decision giving consideration not only to the current custodial arrangement, but also to give Mother increased custody of E.G. and A.G. in light of her progress after her criminal convictions. This being the case, we find no abuse of discretion. ***See D.R.L. v. K.L.C.***, 216 A.3d 276, 285 (Pa. Super. 2019) (finding no abuse of discretion where the trial court's findings concerning the child's best interests are supported by the record and its conclusions from the evidence are reasonable); ***M.J.M. v. M.L.G.***, 63 A.3d 331, 337 (Pa. Super. 2013) (finding no merit in mother's factor-by-factor critique of trial court's assessment of custody factors where it appropriately considered the factors enumerated in Section 5328(a) and its findings were supported by the record).

Out of an abundance of caution, though, we address Maternal Grandmother's arguments about the trial court's determination of the individual custody factors.

## A. Factor (a)(2)

Maternal Grandmother first focuses on factor (a)(2) concerning abuse against the children as not weighing against either party. The trial court found

- 11 -

that this factor favored nether party. Maternal Grandmother, however, asserts that it should have been weighed in her favor because of the *in camera* testimony of E.G. and A.G. alleging that Mother struck A.G. on the face and arms and made him kneel in rice as punishment. At the trial, however, Mother denied that she ever slapped or beat A.G. on the face, admitting only that she slapped his hands as corporal punishment years ago. *See* N.T., 8/15/22, at 69, RR. 366a. The trial court credited this testimony and concluded in both cases that the children are not currently in any physical danger with Mother. *See* Order, 9/19/22, at 10, RR. 59a; Order, 9/19/22, at 9, RR. 78a.

Maternal Grandmother also notes that Mother had all three children with her when she tried to deliver drugs to the father of G.S. in prison. The trial court acknowledged this fact but noted that "Mother has made significant progress between 2017 and present[.]" *Id*. It was within the trial court's discretion how much weight to attach to Mother's past criminal conduct. That the trial court decided that her recent progress outweighed her past conduct was within its discretion and will not be disturbed by this Court.

### B. Factor (a)(3)

Maternal Grandmother next attacks the trial court's determination of factor (a)(3) concerning the parental duties performed by each party. The trial court concluded that both parties fulfill this factor. Maternal Grandmother, however, argues that this factor should have been found in her favor, highlighting her prior years when she was the primary caregiver for the

children. Again, Maternal Grandmother is simply asking us to re-weigh the evidence in her favor. That Maternal Grandmother was the primary caregiver in the past in no way diminishes the evidence that Mother currently is able to perform parental duties. Indeed, in her argument, Maternal Grandmother cites no evidence that Mother is not able to perform parental duties at this time. In the absence of such evidence, we find no merit to Maternal Grandmother's argument on this factor.

### C. Factor (a)(4)

Next, Maternal Grandmother asserts that the trial court erred in its assessment of factor (a)(4) concerning the need for stability and continuity in the children's education, family life and community life.

As it explained in its discussion of this factor, the trial court was particularly concerned in promoting the best interests of the children by causing the least amount of disruption to the current custodial arrangement. First, concerning G.S., the trial court articulated its desire to avoid unsettling the current arrangement with Mother having primary physical custody while ensuring that Maternal Grandmother still had time with youngest child.

> G.S. has been consistently residing with Mother since she returned to Maternal Grandmother's home in June of 2019. In the early fall of 2021, when Mother was evicted from Maternal Grandmother's home, she took G.S. with her. G.S. has been residing primarily with Mother since that time, with the exception of spending every other weekend with his siblings at Maternal Grandmother's home. For at least the past year, Mother has been primarily the one who performs all caretaking duties for G.S., including waking him up and getting him ready for school, taking him to and from daycare/school, cooking his meals, and putting

- 13 -

him to bed at night. G.S. completed kindergarten at Pittston Area, and is presently in the first grade at Wyoming Area. Mother has secured appropriate daycare for G.S. at times that she is working. Mother described her relationship with G.S. as "he's my sidekick" and that the two of them do everything together. The Court conducted an *in camera* interview with G.S., and he presented as a happy, healthy young man.

This Court does not find reason to significantly disrupt the schedule and routine G.S. has become accustomed to, as such would not be in his best interest at this time. Accordingly, this factor weighs heavily in favor of Mother, and supports the Court's decision to ensure that G.S. remain primarily in her custody, with Maternal Grandmother having partial periods of physical custody. The Court does not find that there is any reason to remove G.S. from his present circumstances by taking him from his Mother and rehoming him with Maternal Grandmother. The Court additionally finds that a sudden uprooting of G.S. and moving him into Maternal Grandmother's home full-time and into a new routine would have a detrimental effect on him at this time. The Court finds that its Order dated August 24th, 2022 maintains consistency in G.S.'s life, and serves G.S.'s best interest at this time.

Order, 9/19/22, at 12-13, RR. 60a-61a.

As this discussion shows, the trial court's awarding Mother custody of G.S. promoted stability because Mother has had primary custody of him for the past several years. While Maternal Grandmother had custody of him in the past when Mother was incarcerated, that has not been the case for several years, and awarding her custody now would disrupt stability and continuity in his life rather than promote it. Thus, we find no error in the trial court's assessment of this factor concerning G.S.

We likewise find no error in the trial court's assessment of this factor as it concerns E.G. and A.G.. Like it did with G.S., the trial court sought to

maintain stability while also giving Mother—as the parent of the children—increased custody.

> E.G. and A.G. have been residing with Maternal Grandmother for nearly all of their lives, and exclusively since April of 2018. Both children are living happy, stable lives with Maternal Grandmother. They are excelling in school at Pittston Area for the last five years, are involved in extracurricular activities, and have each developed friendships. Both children have developed into articulate, polite individuals while in the primary care of Maternal Grandmother. While both children do have mental health concerns, Maternal Grandmother has enrolled both in counseling, and has ensured that they remain engaged with those services.
>
> This Court does not find reason to significantly disrupt the schedule and routine that E.G. and A.G. have become accustomed to, as such would not be in their best interest at this time. Accordingly, this factor weighs heavily in favor of Maternal Grandmother, and supports the Court's decision to ensure that Maternal Grandmother have substantial custodial periods with A.G. and E.G., and that the children remain enrolled in Maternal Grandmother's school district. While the goal certainly is to incrementally increase Mother's custodial time with her children, the Court finds that a sudden uprooting of both children and moving them to Mother's home full-time, into a new routine and new school district in Wyoming Area, would have a detrimental effect at this time. Therefore, the Court feels that a week on/week off schedule for Mother and Maternal Grandmother as outlined in this Court's order dated August 24th, 2022, with Father having the same amount of custodial time as he has been exercising in recent years, serves the best interest of both children's well-being.

Order, 9/19/22, at 11-12, RR. 80a-81a.

After review, we find no reason to disturb the trial court's well-reasoned assessment of factor (a)(4).

### D. Factor (a)(8)

Maternal Grandmother next focuses on factor (a)(8) concerning the attempts of a parent to turn the child against the other parent. The trial court

found that this factor weighed in Mother's favor concerning all three children. In so finding, the trial court recounted an August 2021 incident in which Maternal Grandmother and her fiancé, Vincent Orloski, asked Mother to move out of their residence. At some point during their argument, E.G. and A.G. became involved in the discussion whether Mother should leave. The trial court found that Maternal Grandmother created an inappropriate situation in which the children "were made to choose a side—ultimately resulting in Mother and G.S. moving out of the home." Order, 9/19/22, at 14, RR. 83a. Maternal Grandmother focuses on this incident and faults the trial court for determining that she created the situation.

When asked about the meeting, Mother testified that it was Maternal Grandmother and Mr. Orloski who asked the children how they felt about Mother leaving the residence. *See* N.T., 8/15/22, at 35-36, RR. 358a. The trial court was free to credit this testimony and find that it was inappropriate for Maternal Grandmother and Mr. Orloski to ask the children regardless of the circumstances. Thus, because there is evidence supporting the trial court's finding, we will not disturb.

Maternal Grandmother also claims in her argument that this incident was the sole basis for the trial court's assessment of this factor. This is not true. Indeed, in finding that the factor weighed in Mother's favor, the trial court also had concerns that Maternal Grandmother coached E.G. and A.G. before their *in camera* interviews with the trial court.

> Additionally of note is the fact that during trial, E.G. and A.G. both came in to their *in camera* interviews with notes that they indicated that their therapist suggested that they prepare. Both children confirmed that Maternal Grandmother knew about the letters, and reviewed them prior to their *in camera* interviews. While the children denied that Maternal Grandmother helped write their letters for the Judge, the Court clearly has a concern that Maternal Grandmother had influence over the content of the letters, as they heavily favored her over their Mother and described incidents almost identical to each other. This raises a concern that Maternal Grandmother has, and may continue to, turn the children against Mother….

*Id*. at 14-15, RR. 83a-84a.

Maternal Grandmother, however, does not address these concerns in her argument on this factor. Thus, we find no basis for disturbing the trial court's assessment of factor (a)(8).

### E. Factors (a)(9), (10) and (12)

For these three factors, all of which the trial court determined both parties fulfilled, Maternal Grandmother essentially raises the same argument, namely, that she is a "stay-at-home" grandmother and is always available to attend to the daily needs of the children. In contrast, she points out, Mother works full-time at Dunkin Donuts and has less availability.

On this factor, Maternal Grandmother merely disagrees with the trial court's determination and its weighing of the evidence. Put differently, Maternal Grandmother thinks she should have full custody of all three children because she is always available while Mother has to work a full-time job. This is not grounds, however, for disturbing the trial court's finding concerning

these three factors, as she again asks us to throw out the trial court's factual determinations for her own.

Besides the fact that this is something we cannot do, we note that Maternal Grandmother cites no record evidence at this time that Mother is unable to fulfill any of the three factors involved. On top of that, she fails to grapple with the presumption that Mother, as the parent of the children, receive custody. In the absence of clear and convincing evidence to the contrary, we will not disturb the trial court's findings that Mother, like Maternal Grandmother, fulfills these three factors.

## F. Factor (a)(13)

Mother next contends that the trial court erred in its assessment of factor (a)(13) concerning the level of conflict between the parties and the willingness of the parties to cooperate with one another. Maternal Grandmother argues that the trial court abused its discretion in finding that this factor weighed in Mother's favor, empathizing that both parties testified at trial that the conflict has diminished.

While recognizing that progress had been made, the trial court still found that Maternal Grandmother's anger and hostility toward Mother remained. First, the trial court noted how Maternal Grandmother made unfounded allegations against the court-ordered counselor.

> Maternal Grandmother and Mother were Court ordered to begin co-parenting as of January of 2022. Shortly after, in March of 2022, Maternal Grandmother filed a Petition for Special Relief seeking to remove Court appointed counselor Mary Pat Melvin

> Scarantino and appoint a different counselor. A hearing on Maternal Grandmother's petition was held, during which Maternal Grandmother, Mother, and Ms. Melvin Scarantino all testified. During her testimony, Maternal Grandmother made a laundry list of accusations of professional misconduct against Ms. Melvin Scarantino. Ms. Melvin Scarantino denied said allegations, describing the same as "professional suicide." She further testified that Maternal Grandmother had a great deal of anger toward Mother, and that was affecting the communication between the parties. Ultimately, the Court found the testimony of Ms. Melvin Scarantino to be credible, and denied Maternal Grandmother's request, ordering that Maternal Grandmother and Mother continue with co-parenting sessions with Ms. Melvin Scarantino.

Order, 9/19/22, at 17, RR. 65a.

The trial court also credited Mother's testimony about the hostility that Maternal Grandmother and her boyfriend, Vincent Orloski, expressed for her when she lived with them.

> Mother testified that while living with Maternal Grandmother and Mr. Orloski from June 2019 until September of 2019, they repeatedly made comments to her about how she was lazy and not taking care of her kids. Additionally, she noted that Mr. Orloski would make comments to Mother about her weight. Mother testified that the comments from Maternal Grandmother and Mr. Orloski "made [her] feel horrible." As of the time of trial, Mother testified that while her relationship with Maternal Grandmother is still "not too good," she does find co-parenting sessions to be helping, noting that "it's not as tense anymore," and that she and her mother were "finding ways to work together."

*Id*. at 18, RR. 66a.

Thus, while acknowledging that progress had been made, the trial court nonetheless concluded that this factor weighed in Mother's favor.

> It is abundantly clear to the Court that all parties have love and affection for the minor child. However, communication is a

> barrier that is preventing these parties from effectively co-parenting for the best interest of G.S. The Court is encouraged by the representations of both Maternal Grandmother and Mother that some progress has been made in co-parenting since Maternal Grandmother's Special Relief petition was denied. However, there is still much work that needs to be done by these two individuals to get to a place where they are effectively co-parenting all of the children, including G.S.
>
> However, in consideration of the above, the Court finds that Mother has taken the steps to improve her life, and has been working to effectively communicate with Maternal Grandmother. The Court still has concern with the anger and hostility that Maternal Grandmother still exhibits toward Mother, and because of that, finds that this factor weighs against Maternal Grandmother.

*Id*.

As this discussion shows, the trial court carefully considered the evidence concerning this factor. In her one-paragraph argument, Maternal Grandmother merely highlights that both parties testified that the conflict has improved. Her argument, though, fails to address the other aspects of the trial court's determination, particularly those that weigh against her and in Mother's favor. We will not disturb the trial court's well-reasoned finding.

### G. Factor (a)(14)

In her final argument for this issue, Maternal Grandmother alleges that the trial court failed to properly weigh factor (a)(14) concerning the history of drug or alcohol abuse of a party or member of a party's household. For this argument, Maternal Grandmother merely rehashes the facts of Mother's prior drug convictions, the facts of which are not in dispute and well-known to the trial court.

Despite her prior drug convictions, the trial court observed that

[s]ince being released on parole in June of 2019, Mother has been compliant with the terms of parole and has no violations. Mother has consistently maintained employment, and presently holds a management position at the Dunkin Donuts. Mother has been raising G. S. by herself for the past year, and G. S. is thriving. The Court acknowledges, and commends, Mother for the strides that she has made in her personal life.

*Id*. at 19, RR. 67a.

Thus, as this discussion shows, the trial court was aware of Mother's prior convictions but chose to focus on the current situation and credit Mother for the progress that she has made in concluding that drug or alcohol abuse was not a present concern. As nothing in Maternal Grandmother's argument undermines this conclusion, we will not disturb it.

**IV.**

Turning to her second issue, Maternal Grandmother argues that the trial court abused its discretion because its order results in E.G and A.G. being separated from G.S. As she points out in her brief, it is the general policy of our courts to keep siblings together unless there is a compelling reason for separating them. This being the case, Maternal Grandmother asserts that there was no compelling reason for separating the three children, especially in light in the *in camera* testimony of both E.G. and A.G. that they wanted G.S. to live with them at Maternal Grandmother's home.

When considering sibling relationships in making a custody determination,

the policy in Pennsylvania is to permit siblings to be raised together, whenever possible (the doctrine of "family unity" or "whole family doctrine"). Absent compelling reasons to separate siblings, they should be reared in the same household to permit the continuity and stability necessary for a young child's development. This policy does not distinguish between half-siblings and siblings who share both biological parents. However, this Court has made clear that the policy against separation of siblings is only one factor—and not a controlling factor—in the ultimate custody decision. In the majority of cases in which this doctrine has been invoked, the children have been reared together prior to separation or divorce of the parents. In cases where the siblings have not been reared in the same household, the force of the doctrine is less compelling.

*Johns v. Cioci*, 865 A.2d 931, 942-43 (Pa. Super. 2004) (some internal citations and quotation marks omitted); *see also M.J.M.*, *supra* at 339 ("It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case.") (citation omitted).

Here, the trial court explained how it wished to keep the siblings together while also maintaining stability and consistency in the children's lives.

This was a very difficult factor for the Court to assess. There is a clear love and bond between E.G., A.G., and their half-sibling G.S., who resides primarily with Mother. The Court additionally notes that Father lives with his girlfriend and his girlfriend's two minor children, with whom E.G. and A.G. have good relationships with and spend time when they see their Father every other Sunday for his custodial periods. During their *in camera* interviews, E.G., A.G., and G.S. each expressed a desire to spend more time with one another. In an ideal world, all three of these children 'would be raised in the same household fill-time. However, circumstances in this case do not make that goal possible at this time.

The intent of the [trial court's custody order] is to strike a balance that provides the children with significantly increased time

- 22 -

with their sibling, G.S., while also maintaining stability and consistency for E.G. and A.G. in other areas of their lives. Therefore, the Court finds its [custody order] is in the best interests of the minor children at this time.

Order, 9/19/22, at 12-13, RR. 81a-82a.

In light of our deferential standard of custody matters, we will not disturb the trial court's determination of what weight to attach keeping the children together versus not disturbing the current custodial arrangement. First, at the outset, we recognize that the trial court did not fully separate E.G. and A.G. from their half-sibling G.S. Under the trial court's arrangement, all three children will be together with Mother for the weeks when she has custody of E.G. and A.G. Additionally, all three children will be together with Maternal Grandmother for the weekends when she has G.S. Except for the weeks when E.G. and A.G. are with Maternal Grandmother, all three children will be together. In structuring its arrangement in this way, the trial court gave careful consideration of keeping the siblings together as much as possible.

Second, to the extent that the trial court separated the siblings, we find no error in the trial court's determination that such periods were still in the best interests of the children in light of other factors. As discussed, keeping siblings together is preferred but not outcome determinative, as it is but one of many factors that a trial court should consider in making a custody determination. **_See Saintz v. Rinker_**, 902 A.2d 509, 513 (Pa. Super. 2006) ("[T]he policy of keeping siblings together is only a consideration and not a

determinant of custody arrangements.") (citation omitted). Here, while the trial court expressed that it wished to keep the children together, it ultimately had to weigh that wish against also ensuring that Mother, as a parent, kept primary custody of G.S., which she has had since the fall of 2021. In our view, this is a compelling reason for having the siblings separate for the short amount of time that they are not together during certain weeks. Accordingly, we discern no abuse of discretion in the trial court's determination in this regard. **See Saintz**, **supra** (finding no abuse of discretion where trial court was aware and considered policy of keeping siblings together, but evidence supported its finding that it was in child's best interest to be separated from younger siblings).

**V.**

In her third and final issue, Maternal Grandmother asserts that the trial court abused its discretion in failing to give additional weight to the well-reasoned preference of the two older children, E.G. and A.G. This consideration is reflected in factor (a)(7), which states that the trial court shall consider "[t]he well-reasoned preference of the child, based on the child's maturity and judgment." 23 Pa.C.S. § 5328(a)(7). As Maternal Grandmother summarizes in her brief, both children expressed to the trial court during their *in camera* interviews that they preferred to live with Maternal Grandmother.

Our Supreme Court has explained, "[a]lthough the express wishes of a child are not controlling in custody decisions, such wishes do constitute an

important factor that must be carefully considered in determining the child's best interest." ***McMillen v. McMillen***, 602 A.2d 845, 847 (Pa. 1992) (citation omitted). Further, "[t]he child's preference must be based on good reasons, and the child's maturity and intelligence must be considered." ***Id***. Finally, "[t]he weight to be given a child's testimony as to his preference can best be determined by the judge before whom the child appears." ***Id***.

First, we recognize that Maternal Grandmother is not alleging that the trial court ignored this factor. Indeed, as shown below, the trial court considered this factor and gave it measured consideration.

> Both minors are very mature and intellectual individuals, and each expressed clear, rational reasons for preferring to live with Maternal Grandmother over Mother. Both children stated that they are happy in their current schools, have established friendships, and have become involved in extracurricular activities that they enjoy. In fact, E.G. was recently appointed to the school's student council. E.G. additionally recently began a part-time job, working approximately twenty-four (24) hours per week. The children were clear that they want to maintain consistency in their lives. Additionally, E.G. and A.G. have clearly established a loving relationship and have developed strong bonds with Maternal Grandmother and with her paramour. The children also clearly love their Mother and enjoy spending time with her, however they expressed apprehensions with living with Mother full time based on past experience. Therefore, the Court finds that this factor weighs in favor of Maternal Grandmother.

Order, 9/19/22, at 13, RR. 82a.

In its Pa.R.A.P. 1925(a) opinion, the trial court added that it gave "great weight" to factor (a)(7) and that, in fact, it was the reason that it awarded Maternal Grandmother shared custody of E.G. and A.G. ***See*** Trial Court Opinion, 9/22/22, at 15 n.7, RR. 124a.

- 25 -

Thus, it is evident that the trial court not only considered the factor in fashioning its custody order concerning E.G. and A.G., but, in fact, relied on the factor in awarding Maternal Grandmother shared physical custody of the two children. The trial court considered the children's maturity, intelligence and reasons for preferring to live with Maternal Grandmother and weighed those considerations against the other factors that weighed in finding that it was in their best interests to also live with Mother. Again, as our review of the record supports the trial court's conclusions, we discern no abuse of discretion in the trial court's determining that the weight of all the factors, taken together, weighed in favor of having Maternal Grandmother and Mother share physical custody of E.G. and A.G. Accordingly, we find no merit in Maternal Grandmother's challenge to the trial court's determination concerning the preference of the children under factor (a)(7).

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/01/2023